# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** *ex rel.* **LAFE BALL,** *Plaintiff,* | : | **CIVIL ACTION** |
| | : | **NO. 23-3414** |
| **v.** | : | |
| **ALCON INC.,** ***et al.*****,** *Defendants.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J. NOVEMBER 25, 2026

## MEMORANDUM OPINION

### INTRODUCTION

Relator-Plaintiff Lafe Ball ("Relator") filed this sealed *qui tam* action on August 31, 2023, asserting claims for violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"),[1] against Alcon Inc.[2] and two of its subsidiaries, Alcon Vision, LLC, and Alcon Laboratories, Inc. (together, "Defendants" or "Alcon"). (ECF 1). In the complaint, Relator alleges that Defendants, which manufacture and sell equipment used in optical surgeries, violated the FCA by, *inter alia*, (1) engaging in an unlawful remuneration scheme to induce surgical supplies customers to purchase equipment eligible for Medicare reimbursement, (2) charging the United States of America ("Government") higher prices for Defendants' services than the rates offered to private sector customers, and (3) retaliating

[1] Notably, none of the counts in Relator's complaint are brought pursuant to the AKS. (ECF 1). Rather, Relator argues that Defendants' alleged violations of the AKS caused FCA violations. (*Id.*).

[2] In his complaint, Relator originally referred to this Defendant as "Alcon, Inc." (ECF 1). However, by stipulation approved on September 11, 2026, the parties identified that "[t]he correct legal name of the defendant entity is 'Alcon Inc.' without a comma," and agreed to modify the docket accordingly. (ECF 47).

against Relator for reporting these violations and other alleged misconduct. (*Id.*; *see also* ECF 54).

On November 30, 2023, the Government filed a sealed motion to extend the intervention deadline and the seal, (ECF 4), which was granted, (ECF 5), and renewed several times, (*see* ECF 7–13). In March 2026, the Government declined to intervene in this action, (ECF 14), and, thereafter, this matter was unsealed, (ECF 15).

Relator continued to prosecute the case. Defendants' final waiver of service of process occurred on June 4, 2026. (ECF 40). On September 2, 2026, Defendants filed a motion to dismiss, (ECF 42),[3] and the underlying motion to transfer venue, (ECF 43). Thereafter, Relator filed an amended complaint, (ECF 54), renewing his original claims with additional supporting details, prompting this Court to order additional briefing on the effect, if any, the amended complaint had on the pending motion to transfer venue, (ECF 56).

Defendants' underlying motion to transfer venue, filed pursuant to 28 U.S.C. § 1404(a), requests that this action be transferred from the United States District Court for the Eastern District of Pennsylvania ("Eastern District of Pennsylvania"), to the Fort Worth Division of the United States District Court for the Northern District of Texas ("Northern District of Texas"). (ECF 43). Relator filed a response in opposition, (ECF 58) and a supplemental response in opposition, (ECF 59). Defendants filed a reply in support of the motion to transfer. (ECF 63).[4] The issues presented

---

3 The motion to dismiss was denied, as moot considering the Relator's filed amended complaint. (ECF 56). Defendants have since filed two additional motions to dismiss, which are pending before the Court. (ECF 60–61). As this matter is being transferred, the transferee court shall address these motions.

4 Relator sought leave to file an additional brief challenging the proposed transfer, (ECF 66–67), which Defendants opposed, (ECF 69), and which this Court denied by Order dated November 16, 2026, (ECF 71), finding the additional brief untimely and potentially prejudicial to Defendants.

in the underlying motion are fully briefed and are ripe for disposition. For the reasons set forth herein, the motion to transfer venue is granted.

**BACKGROUND**

Briefly, the facts relevant to the underlying motion are as follows:

> Defendant Alcon Inc. is a stock corporation headquartered in and organized under the laws of Switzerland. (ECF 43-1, ¶ 8). Its subsidiaries, Defendants Alcon Vision, LLC, and Alcon Laboratories, Inc., are organized under the laws of Delaware and maintain their principal places of business in Fort Worth, Texas. (*Id.,* ¶¶ 6–7; *see also* ECF 54, ¶ 5). Defendants, operating collectively, primarily manufacture and sell equipment and devices used in optical surgery, as well as service contracts for the maintenance and repair of such equipment. (ECF 54, ¶¶ 5, 10–13). Relator, now a California resident, (ECF 1, at 3), was the Director of Defendant Alcon Vision, LLC's "United States Service Operations for its entire United States sales territory from June 2018 until February 2023." (ECF 54, ¶ 2). In that role, Relator's responsibilities included, *inter alia*, "overs[eeing] operations and field service sales for Alcon's service contracts, which it sold to purchasers of its capital equipment used in optical surgeries." (*Id.* ¶ 3).
>
> In the amended complaint, Relator alleges that, while he was Defendants' employee in Texas, (*see* ECF 43-2, ¶¶ 9–10), Defendants violated the FCA by, *to wit*: (1) offering and paying unlawful remuneration to customers in violation of the AKS, causing those customers to submit Medicare reimbursements that falsely certified the customers' AKS compliance; (2) overcharging the Government for service contracts, while concealing the typical private sector customer prices for similar contracts; and (3) retaliating against Relator for his efforts to intervene in these alleged FCA violations. (*See* ECF 54, at 52–57).
>
> Specifically, Relator alleges that Defendants offered clients unlawful remuneration, in the form of significant discounts on service contracts for the maintenance of equipment, to induce those clients to purchase surgical supplies, such as intraocular lenses ("IOLs"). (*Id.* ¶ 57). The cost of IOLs and similar equipment is reimbursed by Medicare, while the cost of service contracts is not. (*Id.* ¶ 57). As such, Relator avers that the Government did not share in the discounts that Defendants offered and the discounts were, therefore, impermissible under the AKS. (*Id.* ¶¶ 167–71). Relator argues that this discount structure operated as the equivalent to a cash payment in exchange for purchasing its supplies — which violates the AKS — and led Defendants' customers to submit Medicare claims that falsely certified AKS compliance when they used Defendants' supplies for Medicare beneficiaries' procedures, thereby violating the FCA. (*Id.* ¶¶ 100–03). Relator avers that this scheme was perpetrated by members of the "Alcon Consumable Sales Division" and "Alcon's Refractive Division," who allegedly requested that Relator approve discounts for customers' service contracts, and

allegedly waived capital equipment fees and costs, to induce the sale of consumable surgical supplies. (*See id.* ¶¶ 105–60). These divisions are in Fort Worth, Texas. (ECF 43, at 18).

Relator identifies what he describes as "a substantial customer footprint in Pennsylvania for the equipment-and-service-contract business implicated by [his] allegations," consisting of 149 Pennsylvania healthcare providers who purchased Defendants' equipment and service contracts during the period relevant to Relator's allegations. (ECF 58, at 11; ECF 58-2, at 3; ECF 59, at 4).

As to the claim that Defendants overcharged the Government for service contracts, Relator specifically alleges that Defendants provided many private sector customers with significant discounts on the price of their service contracts, but did not offer the Government — namely, the Veterans Administration — these same discounts. (ECF 54, ¶ 179). Relator avers that Defendants purposely set a "list price" for their service contracts significantly higher than the price at which they expected to sell those contracts after discounts, *in part*, so that they could represent the inflated price to the Government as the true price of their services. (*Id.* ¶ 180). Relator alleges that Defendants violated the FCA by failing to disclose the true price information of these service contracts, and, as a result, defrauded the Government by overcharging it for service contracts. (*Id.* ¶ 203).

Lastly, with regard to his retaliation claim, Relator specifically avers that he experienced numerous adverse consequences after he raised compliance concerns to Alcon's management and made internal reports of Defendants' allegedly unlawful conduct. (*Id.* ¶¶ 204–09). Specifically, he avers that he "faced severe pushback and criticism" from his superiors, including his direct manager, Jason Jiminez (*id.* ¶ 207); that Defendants improperly placed him on a performance improvement plan, (*id.* ¶ 208); and thereafter, Defendants terminated his employment, (*id.* ¶ 209). Relator argues that, while Defendants claimed these were performance-related consequences, they were actually "excuse[s] to avoid disclosing that he was terminated because [he engaged] in protected conduct under the FCA." (*Id.*). The supervisors who Relator claims retaliated against him worked in Alcon's Fort Worth offices; none of the employees Relator named in his complaint operated in Pennsylvania. (ECF 43, at 18–19; ECF 43-2, at 3–4).

**LEGAL STANDARD**

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of transferring venue under § 1404(a) "is to prevent the waste

of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation modified). In determining whether a venue transfer is appropriate, "the district court is vested with a wide discretion." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973) (citations omitted).

The determination of whether a venue transfer is appropriate under § 1404(a) requires consideration of two elements; *to wit*: (1) whether the original and the requested venues are proper, and (2) if both venues are proper, whether the convenience of the parties and witnesses, and the interest of justice, would be better served by transfer to a different forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878–79 (3d Cir. 1995). Venue in an FCA action is proper "in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). If this Court determines that venue in both fora is proper, it must then engage in a balancing of interests to determine whether the convenience of the parties and witnesses, and the interest of justice, would be better served by a transfer to the requested forum. *Jumara*, 55 F.3d at 879; *see also Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 197 (E.D. Pa. 2008). Although there is no definitive formula or exhaustive list of factors to consider when determining whether a transfer of venue is warranted, a court must weigh relevant private and public interests in its decision process. *Jumara*, 55 F.3d at 879. The United States Court of Appeals for the Third Circuit (the "Third Circuit") articulated a non-exhaustive list of these interests in *Jumara* (the "*Jumara* factors"). *Id.* at 879–80.

Under *Jumara*, the private interests a court should consider include, *to wit*: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their

relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records, but only to the extent that the files could not be produced in the alternative forum. *Id.* at 879 (citations omitted).

Meanwhile, *Jumara* specifies that the public interests a court should consider include, *to wit*: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80 (citations omitted).

The moving party bears the burden of establishing the need for a transfer of venue. *Id.* at 879.[5] The court may exercise its discretion to transfer venue if the moving party demonstrates that "all relevant things considered, the case would be better off transferred to another district." *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (quoting *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)). "Transfer is not warranted, however, if the result is merely to shift the inconvenience from one party to the other." *DermaMed, Inc. v. Spa de Soleil, Inc.*, 152 F. Supp. 2d 780, 783 (E.D. Pa. 2001) (citation omitted). "Unless the moving party can demonstrate that the relevant factors weigh strongly in its favor, the plaintiff's choice of forum will likely prevail." *Dariz v. Republic Airline Inc.*, 377 F. Supp. 3d 499, 502–03 (E.D. Pa. 2019) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

---

[5] "Appropriate supporting evidence includes documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties." *Fellner ex rel. Est. of Fellner v. Philadelphia Toboggan Coasters, Inc.*, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005) (citing *Plum Tree*, 488 F.2d at 757 n.2).

**DISCUSSION**

As noted, Defendants seek to transfer this matter to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). As a preliminary matter, and consistent with § 1404(a), this Court must first consider whether venue is appropriate in both fora. *See Jumara*, 55 F.3d at 878–79.

Here, venue is appropriate in either district. While Defendants argue that venue is proper in the Northern District of Texas and that this matter should not proceed in this judicial district (the Eastern District of Pennsylvania), Defendants do not argue that venue is improper here. (*See* ECF 43, at 12–15; ECF 63, at 6–7). Accordingly, this Court concludes that Defendant has effectively waived any such argument or defense and, further, finds that venue is proper in this judicial district.[6] Further, Relator does not dispute that venue would be proper in the Northern District of Texas. (*See* ECF 58, at 13). Nor could he, as Defendants Alcon Vision, LLC, and Alcon Laboratories, Inc., both maintain their principal place of business in Fort Worth, Texas, (ECF 43-1, at 1), such that they "transact[] business" in the Northern District of Texas,[7] rendering it an appropriate venue for an FCA action. 31 U.S.C. § 3732(a).

---

[6] Improper venue is a waivable defense. Fed R. Civ. P. 12(b)(3), 12(h). To preserve a challenge of improper venue, a defendant must raise the issue in a responsive pleading. Fed R. Civ. P. 12(b). If the responsive pleading does not challenge improper venue, the defense is waived. *See* Fed. R. Civ. P. 12(h)(1)(B). Further, where a defendant does not "interpose timely and sufficient objection to the venue," the district court retains jurisdiction, even if venue would otherwise be improper. 28 U.S.C. § 1406(b). Here, Defendants have not moved to dismiss this matter for improper venue pursuant to Rule 12(b)(3), nor have they raised improper venue as an affirmative defense. Instead, they filed the underlying motion to transfer venue pursuant to § 1404(a), in which they properly outline the legal prerequisite that venue be proper in the transferee forum, and make extensive reference to a case in which this Court made clear that it considers whether venue is proper in the original forum. (*See* ECF 43, at 11–12) (citing *Nathan v. Takeda Pharms. U.S.A., Inc.*, 2019 WL 3216613, at *2 (E.D. Pa. July 17, 2019)). Under these circumstances, this Court finds that Defendants have waived any argument that this district is not an improper venue. *See Farley v. Cernak*, 2016 WL 162238, at *2 (E.D. Pa. Jan. 13, 2016).

[7] Fort Worth is located in the Northern District of Texas. *See* U.S. Dist. Court, N.D. Tex.., Locations: Fort Worth, https://www.txnd.uscourts.gov/ location/fort-worth.

Having made the threshold determination that venue would be proper in either the Eastern District of Pennsylvania or the Northern District of Texas, this Court must, consistent with § 1404, weigh the *Jumara* factors to determine whether the convenience of the parties and witnesses, and the interest of justice, favor a transfer of venue.

**A. Private Interests**

As noted, under *Jumara*, the private interests a court should consider include, *to wit*: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records, but only to the extent that the files could not be produced in the alternative forum. *Jumara*, 55 F.3d at 879 (citations omitted). The Court considers each interest in turn.

*1. Plaintiff's Forum Preference*

Generally, a plaintiff's choice of venue receives deference. *See Byrne v. Terex USA, LLC*, 807 F. Supp. 3d 476, 481 (E.D. Pa. 2025). However, the plaintiff's choice is not dispositive and receives "considerably less weight" where "the plaintiff chooses a forum which is not his home." *Siegel v. Homestore, Inc.*, 255 F. Supp. 2d 451, 456 (E.D. Pa. 2003) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)). Further, "where the majority of operative facts and events 'giving rise to plaintiff's claims take place in another forum, that weighs heavily in favor of transfer.'" *Harper v. Sky King Fireworks, Inc.*, 2020 WL 4039060, at *3 (E.D. Pa. July 16, 2020) (quoting *Courtois v. TMG Health, Inc.*, 2018 WL 2688314, at *2 (E.D. Pa. June 5, 2018)). "Moreover, Courts are more inclined to transfer an action if events giving rise to the action

occurred in the proposed [transferee] district." *Id.* (citing *Ramsey v. Devereux Found.*, 2016 WL 3959075, at *5 (E.D. Pa. July 22, 2016)).

Here, while the Court gives Relator's decision to pursue this action in the Eastern District of Pennsylvania some weight in its analysis, that weight is considerably diminished by the fact that Relator is not at "home" in this judicial district. *See Siegel*, 255 F. Supp. 2d at 456 (citation omitted). Rather, he is a resident of California. (ECF 1, at 3). Additionally, as will be explored in the Court's discussion of the third private interest factor, most of the operative facts alleged in Relator's complaint occurred in Texas, as opposed to Pennsylvania. The only contact Relator's allegations have with this district is the alleged presence of some of Defendants' customers in Pennsylvania. Accordingly, this factor does not weigh against transfer. *See Harper*, 2020 WL 4039060, at *3 (citation omitted).

*2. Defendant's Forum Preference*

"The second factor to be considered is Defendant's choice of forum. Defendant's preference is entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." *EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005) (citing *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 446 (E.D. Pa. 1999)).

Here, Defendants would prefer to litigate this action in the Northern District of Texas, where the two subsidiary Defendants are headquartered and where the bulk of the operative conduct alleged in Relator's complaint occurred. Therefore, while this factor generally has less weight than Plaintiff's preference, under the circumstances in this case, it weighs in favor of transfer. *See Nathan*, 2019 WL 3216613, at *5; *Coppola*, 250 F.R.D. at 198.

*3. Where the Claim Arose*

When considering the third private interest factor, "the relevant inquiry for purposes of a transfer motion is [to determine the location of] 'the center of gravity of the dispute, its events[,] and transactions.'" *United States v. Warren*, 2022 WL 2718714, at *5 (E.D. Pa. July 13, 2022) (quoting *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000)). "Typically[,] the most appropriate venue is where a majority of events giving rise to the claim arose." *In re Amkor Tech., Inc. Sec. Litig.*, 2006 WL 3857488, at *5 (E.D. Pa. Dec. 28, 2006) (citation omitted). However, "[w]hen a plaintiff's cause of action 'arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where' the claims arose." *Phoenix Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*, 381 F. Supp. 3d 416, 423 (E.D. Pa. 2019) (quoting *Palagano v. NVIDIA Corp.*, 2015 WL 5025469 at *5 (E.D. Pa. Aug. 25, 2015)).

Here, Relator's allegations in the amended complaint focus primarily on the conduct of Alcon employees, most located at Alcon's Fort Worth offices, who, *to wit*: allegedly induced the sale of consumable surgical equipment by requesting that Relator approve discounts on customer service contracts, and waived capital equipment fees and costs, (*see* ECF 54, ¶¶ 105–60); allegedly inflated the rates that Defendants charged the Government for service contracts, in comparison to private sector customers' rates, (*see id.* ¶¶ 178–203); and allegedly retaliated against Relator for his response to this conduct, (*see id.* ¶¶ 204–09). These alleged actions, some of which Relator has described as "an institutional practice," (*id.* ¶ 173), form "the center of gravity" of the instant action. *See Warren*, 2022 WL 2718714, at *5 (citation omitted). Most, if not all, of these actions occurred in the Fort Worth area, and none of them occurred in Pennsylvania.

Relator's theory of Defendants' culpability similarly focuses on conduct that occurred in Fort Worth. The FCA creates liability for any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" from the Government. 31 U.S.C. § 3729(a)(1)(A). Relator alleges that Defendants violated the Act by "knowingly caus[ing] to be presented materially false or fraudulent claims for payment or approval." (ECF 54, ¶ 216); (*see also id.* ¶ 101–03 ("*Alcon's conduct* violated the AKS and therefore *caused* its customers to submit claims to Medicare for cataract surgery, which . . . falsely certified that they complied with the AKS.") (emphasis added)). Relator has, thus, focused his allegations on Defendants' alleged act of causing healthcare providers to submit false claims — a strategic policy decision made by those at Alcon's headquarters, (*id.* ¶¶ 172–75), *see Phoenix Ins. Co.*, 381 F. Supp. 3d at 423 (citation omitted). While Relator also avers that healthcare providers falsely submitted claims that certified compliance with the AKS, (ECF 54, at 25), that is not the focus of this lawsuit. As noted by Defendants, "Relator has not sued any providers." (ECF 63, at 11). Instead, Relator's core allegation is that *Alcon's* conduct caused the submission of these false certifications. (*See* ECF 54, ¶ 101). Thus, the Fort Worth-based Alcon employees' actions represent the operative conduct forming the center of gravity of the kickback allegations. *Cf. Palagano*, 2015 WL 5025469 at *5 (quoting *Kerik v. Tacopina*, 2014 WL 1340038, at *5 (D.N.J. Apr. 3, 2014)) ("in the context of claims based on misrepresentations or omissions, 'misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received.'").

Relator's attempt to characterize the actions of Defendants' customers as the most relevant conduct, (*see* ECF 58, at 12–13), is unavailing. Relator argues that, while Defendants' alleged kickback scheme involved decisions made by Alcon employees in Fort Worth, "[t]he alleged scheme culminated when [the equipment that Defendants allegedly induced their customers to

purchase with unlawful remuneration was] used in federally reimbursed procedures, and claims tainted by the alleged kickbacks were submitted to Medicare." (*Id.* at 12). Relator argues that this claim submission occurred at healthcare practices across the country, including numerous providers in Pennsylvania.[8] (*Id.* at 10–11). While the alleged FCA violation may have culminated upon the providers' submission of Medicare reimbursement claims — and some of these submissions may have taken place in Pennsylvania — that does not make those submissions the most relevant conduct in *this action*, in which Relator has focused his allegations on the *Defendants'* conduct and has not brought claims against any of the healthcare providers who allegedly made such submissions. While the alleged scheme's contacts with Pennsylvania are potentially numerous, they do not clearly rival the *significance* to this action of the alleged conduct that occurred in Fort Worth.

Furthermore, Relator has not alleged any Pennsylvania-based activity in relation to his claims that Defendants inflated the prices they charged the Government for service contracts and unlawfully retaliated against him. Rather, as alleged, these claims arise solely from the conduct of Alcon personnel. (*See* ECF 54, at 45–52). As discussed, these personnel were based primarily

---

[8] Relator also alleges that "Alcon Inc., according to its SEC filings, operates a 21,800 square-meter facility within this District — located in Sinking Springs, Pennsylvania, Berks County — focused on 'Production for Surgical Business.'" (ECF 54, ¶ 22). Relator argues that this "facility's presence in Sinking Spring only further demonstrates the extent of Defendants' commercial presence in Pennsylvania." (ECF 59, at 4). Defendants dispute this, claiming that Alcon Inc. does not operate this facility. (ECF 63, at 1) (citing ECF 60-1). The declaration that Defendants reference indicates that Alcon Research, LLC, operates the facility, rather than Alcon Inc. (ECF 60-1, at 5).

The Court need not resolve this factual dispute over the facility's ownership, as the outcome would not affect the Court's assessment of this factor. Even if Defendant Alcon Inc. operates this facility, as Relator alleges, it is not clear why this would weigh against transfer. The presence of this facility may indicate a connection between Defendants and Pennsylvania *in general*, but it does not demonstrate a connection to *the operative facts* underlying this action. Relator has not alleged any connection between the Sinking Springs facility and the conduct challenged here. As such, even if Defendant Alcon Inc. operated the facility, that would not weigh against a transfer of venue.

in the Northern District of Texas. Accordingly, because the center of gravity of each of Relator's claims is in the Northern District of Texas, this factor weighs in favor of transfer.

4. *Convenience of the Parties*

When weighing the fourth private interest factor, courts consider the parties' physical proximity to the fora and their relative financial condition. *See, e.g.*, *Nathan*, 2019 WL 3216613, at *5; *Coppola*, 250 F.R.D. at 198–99. "This factor turns on the inconvenience each party would endure by having to litigate in its non-preferred forum and the financial resources it would expend to do so." *Harper*, 2020 WL 4039060, at *3 (citing *Gunther v. Dependable Auto Shippers, Inc.*, 2013 WL 247285, at *4 (E.D. Pa. Jan. 23, 2013)). The convenience of the *parties*, not their counsel, is relevant to the § 1404(a) analysis. *Matt v. Baxter Healthcare Corp.*, 74 F. Supp. 2d 467, 469 (E.D. Pa. 1999) (citing *Solomon v. Continental Amer. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir.1973); *Jordan v. Delaware & Hudson Ry. Co.*, 590 F. Supp. 997, 998 (E.D. Pa. 1984)).

Here, the parties' physical proximity to Fort Worth suggests that a transfer would be convenient for them. Relator lives in Temecula, California, (ECF 1, at 3), which is significantly closer to Fort Worth, Texas, than it is to Philadelphia, Pennsylvania.[9] That weighs in favor of transfer. Likewise, litigating in Fort Worth would be even more convenient for the Defendants, as two of the Defendant entities are headquartered there. Notably, Defendant Alcon Inc. is headquartered in Fribourg, Switzerland, (ECF 43-1, at 3), which is closer to Philadelphia than it is

[9] The undersigning Judge sits in the Philadelphia courthouse of the Eastern District of Pennsylvania. Temecula and Philadelphia are approximately 2,700 miles apart by road and 2,350 miles apart by air. *See* TravelMath, *Temecula, CA, to Philadelphia, PA*, https://www.travelmath.com/from/Temecula,+CA/to/Philadelphia,+PA. Temecula and Fort Worth are approximately 1,400 miles apart by road and 1,150 miles apart by air. *See* TravelMath, *Temecula, CA, to Fort Worth, TX*, https://www.travelmath.com/from/Temecula,+CA/to/Fort+Worth,+TX.

to Fort Worth.[10] However, any added inconvenience of litigating in Fort Worth to Defendant Alcon Inc.'s Swiss representatives is likely outweighed by the convenience to their colleagues.

More significant than the distance the parties would need to travel is the financial burden that a transfer of venue may or may not place on the parties. Defendants have not indicated that they would suffer any unique financial burden by litigating in either forum. (*See* ECF 43, at 12; ECF 63, at 14–15). Nor does the Court believe they would experience such a burden. *See Byrne*, 807 F. Supp. 3d. at 483 (citation omitted) ("it is self-evident that[,] as major corporations[,] [Defendants] have greater resources than Plaintiffs").

By contrast, Relator argues that he would face a significant financial burden if required to litigate in the Northern District of Texas, as opposed to the Eastern District of Pennsylvania. Relator argues that, because his attorneys are licensed to practice in Pennsylvania, but not in Texas, a transfer to the Northern District of Texas would require him to retain local counsel in addition to his present counsel.[11] (ECF 58, at 13–14; ECF 59, at 5). Relator claims he is "not financially

---

[10] Fribourg and Philadelphia are approximately 4,000 miles apart by air. *See* TravelMath, *Fribourg, Switzerland, to Philadelphia, PA*, https://www.travelmath.com/from/Fribourg,+Switzerland/to/Philadelphia,+PA. Fribourg and Fort Worth are approximately 5,200 miles apart by air. *See* TravelMath, *Fribourg Switzerland, to Fort Worth, Texas*, https://www.travelmath.com/from/Fribourg,+Switzerland/to/Fort+Worth,+TX.

[11] Northern District of Texas Local Civil Rule 83.10 requires parties to retain local counsel, *i.e.*, a member of the Northern District of Texas bar who resides in or maintains a principal office in that district, whenever a party is represented by an attorney who does not reside in or maintain a principal office in that district. N.D. Tex. Loc. R. Civ. P. 83.10(a). Such counsel must be able to perform any duty required by the presiding judge or the local rules. N.D. Tex. Loc. R. Civ. P. 83.10(b). A presiding judge may exempt a party from this requirement. N.D. Tex. Loc. R. Civ. P. 83.10(c). However, judges in the Northern District of Texas appear reluctant to do so. *See, e.g.*, *United States v. Fuerte*, 2026 WL 2837898, at *1–2 (N.D. Tex. Sept. 21, 2026) (citations omitted) ("Fort Worth is not Houston; it is not Dallas; it is certainly not Plano. The Fort Worth Division has the greatest population of all the divisions in the country that have only two active district judges. As a result, the Division's docket is disproportionately fast and busy. . . . Local Rule 83.10(a) and Local Criminal Rule 57.10(a) apply in the entire Northern District but have a special importance in the Fort Worth Division. The judges of this Division, including the undersigned, strictly enforce the rules not out of any animosity toward or distrust of out-of-town attorneys, but because it is essential to the smooth, efficient operation of the Division's busy and ever-growing docket. . . . The

situated to incur substantial Texas local-counsel fees throughout the duration of the litigation," (ECF 58-2, ¶ 19), and argues that, although he can afford his present counsel because they operate under a contingency fee agreement, having to retain local counsel "would likely render [him] incapable of litigating this matter to its conclusion."[12] (ECF 58, at 13–14). He argues that transferring venue would, thus, impermissibly shift a major hardship onto him, the party less able to sustain cost increases. (*Id.*).

Under the circumstances argued by Plaintiff, this Court agrees that a transfer to the Northern District of Texas would impose a financial burden on Relator, more than on Defendants. Defendants' efforts to frame Relator's financial hardship as a hardship on Relator's counsel that the Court should not weigh, (ECF 63, at 14–15), is misguided. While it is true that the convenience of counsel should not be considered in the transfer analysis, *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973), Relator does not argue that a transfer would inconvenience his counsel. Instead, Relator argues that *he* will be inconvenienced because *he* will need to pay the expenses associated with retaining local counsel and may be unable to do so. (ECF 58, at 13–14). Courts have recognized expenses to parties as weighing against transfer, particularly where, as here, one party has more resources than the other. *See, e.g.*, *Punoose v. Equifax Info. Servs.*, 2018 WL 2735403, at *3 (E.D. Pa. June 7, 2018); *Church & Dwight v. Mayer Lab'ys, Inc.*, 2010 WL 3907038, at *11 (D.N.J. Sept. 28, 2010); *contra In re Amoskeag Bank Shares, Inc. Litig.*, 1990 WL 897, at *1 (E.D. Pa. Jan. 4, 1990). Although Relator has not described the full extent of the

Court enforces Local Rule 83.10(a) here as it would in any case of this kind, absent extraordinary circumstances.").

12 Relator argues that he is familiar with the financial burden that retaining local counsel would impose on him because he recently had to retain local counsel in another action in the Northern District of Texas with a narrower scope (and, therefore, less work for local counsel to charge for) and incurred $10,558.40 in local counsel fees and costs. (ECF 58, at 13–14; ECF 58-2, at 3–4).

financial hardship a transfer would impose on him, nor did he address any possible paths to mitigating this burden (*e.g.*, retaining local counsel on a contingency basis), this Court finds that the possible financial burden of transfer somewhat outweighs the geographic convenience to the parties. Accordingly, this factor weighs against transfer of venue.

*5. Convenience of the Witnesses*

Courts consider "the convenience of the witnesses — but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. "The convenience of non-party witnesses is accorded greater weight in the § 1404(a) analysis than party witnesses." *Rita's Water Ice, Inc. v. Josie's Water Ice, Inc.*, 1999 WL 482319, at *4 (E.D. Pa. July 9, 1999) (citation omitted). Further, "in evaluating the convenience of the witnesses, the Court must place emphasis on the materiality of each witnesses' testimony rather than the quantity of proposed witnesses." *Id.* (citation omitted). This is because "[o]ne key witness may outweigh a great number of less important witnesses." *Id.* (quoting *Computers Plus, Inc. v. AGS Enters., Inc.*, 1989 WL 37112, at *2 (E.D. Pa. Apr.13, 1989)).

Here, Defendants argue that the convenience of the witnesses favors transfer because most relevant witnesses in this case are current or former[13] Alcon employees, located in or near Fort Worth. (ECF 43, at 20). Relator disagrees, arguing that the allegations in this case are not limited to just the conduct that occurred in Texas, but rather detail a scheme that "operated through healthcare providers nationwide," most of which are located on the east coast of the United States, near the Eastern District of Pennsylvania. (ECF 58, at 15). Relator further argues that because his claims involve Defendants' alleged overcharging of Government healthcare programs, he will

[13] Defendants place particular emphasis on the fact that two of the witnesses residing in Texas no longer work for Alcon, meaning they are non-party witnesses. (*See* ECF 63, at 16).

likely rely on Government employee witnesses, who reside primarily in Washington, D.C., which is closer to Philadelphia than Fort Worth. (*Id.*).

Based on the arguments proffered, this Court observes that the most critical and, likely, the greatest number of witnesses are in Texas. As previously discussed, Relator's allegations primarily focus on the conduct of Defendants' employees in Texas. While some healthcare providers and government employees might be witnesses, Relator has not indicated how many of them would serve as witnesses, or where those particular witnesses are located (besides asserting that most Government employees live in Washington, D.C.), which makes it difficult for the Court to assess the relative inconvenience to those witnesses of traveling to Fort Worth versus Philadelphia. (*See* ECF 58, at 14–15). Meanwhile, Defendants have established that several of the Alcon employees specifically named in Relator's complaint, including two former employees who are not considered parties to this action, live in Texas. (ECF 63, at 15–16; ECF 43-2, at 4–5). Ordinarily, these considerations would favor a transfer to the Northern District of Texas.

However, the parties have not argued nor demonstrated that any witnesses — third-party or otherwise — would "actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Therefore, this factor is at best neutral but also leans toward favoring a transfer. *See Nathan*, 2019 WL 3216613, at *6.

*6. Location of Books and Records*

The final private interest factor, the location of books and records, matters only "to the extent that [such books and records] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. "[T]he technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) (quoting *Am. High–Income Trust v. AlliedSignal, Inc.*, 2002 WL 373473, at

*5 (D. Del. Mar. 7, 2002). This is because such advances have "lowered the cost of moving [documents and records] from one place to another." *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 443 (D. Del. 2015) (quotation omitted).

Here, it is not apparent that there are any books or records located in or near one district that could not be produced in the other. Defendants argue that the relevant evidence is in Fort Worth, where Defendants Alcon Vision, LLC, and Alcon Laboratories, Inc., maintain their headquarters. (ECF 43, at 30; ECF 63, at 10–11). However, as Relator argues, (ECF 58, at 16), Defendants do not identify any physical records located in Texas. Relator has also not identified any books or records located in or near the Eastern District of Pennsylvania that could not be produced in the Northern District of Texas. (*See id.*). As neither party has identified any records that could not be produced in either or both fora, this factor is neutral.

**B. Public Interests**

As noted, under *Jumara*, the public interests a court should consider include, *to wit*: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879–80 (citations omitted). The Court considers each interest in turn.

*1. Enforceability of the Judgment*

Courts find this factor neutral where a judgment would be enforceable in both fora. *See, e.g.*, *Pennigar v. Craig*, 2026 WL 1245722, at *3 (E.D. Pa. May 6, 2026); *Nathan*, 2019 WL 3216613, at *6; *Schlenker v. Immucor, Inc.*, 2009 WL 5033972, at *5 (E.D. Pa. Dec. 22, 2009). That is the case here. This Court agrees with the parties that a judgment in this case would be

enforceable regardless of whether this Court or a court in the Northern District of Texas issues it. (*See* ECF 43, at 23; ECF 58, at 11–12). Accordingly, this factor is neutral.

*2. Practical Considerations Making Trial Easy, Expeditious, or Inexpensive*

The practical considerations that courts weigh to assess the ease, speed, and cost of trial mirror several of the private interest factors, such as the location of the parties and witnesses, and the location of other evidence. *See Nathan*, 2019 WL 3216613, at *6; *Coppola*, 250 F.R.D. at 200; *Pennigar*, 2026 WL 1245722, at *3; *S.L.W. v. Res. for Hum. Dev.*, 2026 WL 821844, at *4 (E.D. Pa. Mar. 25, 2026). As noted earlier, those considerations are either neutral or favor a transfer of venue. In *Nathan*, this Court found this factor to favor a transfer of venue where "most of the facts underlying Plaintiff's alleged claims occurred in the [transferee district], and as a result, most of the witnesses [we]re likely to be located in or around [a city within that district], making a trial in that forum easier, more expeditious, and less costly." 2019 WL 3216613, at *6. Here, where most of the operative facts underlying Relator's complaint occurred in or near Fort Worth, and most relevant witnesses are also located near that city, this Court similarly finds that litigating this matter in the Northern District of Texas would be easier, more expeditious, and less costly. Accordingly, this factor favors a transfer of venue.

*3. Court Congestion and Relative Administrative Difficulty*

Although courts consider relative congestion, "it generally is not a factor worthy of great weight." *Penda Corp. v. STK, LLC*, 2004 WL 2004439, at *3 (E.D. Pa. Sept. 7, 2004) (collecting cases). Further, where there is no indication of a meaningful difference in congestion between fora, courts consider this factor to be neutral. *See, e.g.*, *McKinney v. Pinter*, 2019 WL 952247, at *7 (E.D. Pa. Feb. 26, 2019); *Nathan*, 2019 WL 3216613, at *6. Here, Defendants have shown, (ECF 43, at 23 n.4), and Relator agrees, (ECF 58, at 17–18), that there is no meaningful difference

in congestion between the Northern District of Texas and the Eastern District of Pennsylvania. Accordingly, this factor is neutral.

*4. Local Interest in Deciding Controversies at Home*

"Courts have a local interest in having localized controversies decided at home." *Murphy v. Trans Union, LLC*, 2012 WL 3536322, at *6 (E.D. Pa. Aug. 15, 2012) (citation omitted). One reason for this is that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947). "Typically, when a substantial amount of the alleged culpable conduct occurred in the chosen forum, that court favors retaining jurisdiction as a matter of local interest." *Coppola*, 250 F.R.D. at 201 (citing *Cancer Genetics, Inc. v. Kreatech Biotech.*, 2007 WL 4365328, at *6 (D.N.J. Dec. 11, 2007)). However, where that is not the case, and the proposed transferee district has a greater connection to the alleged culpable conduct, transfer is favored. *See Lamusta v. Lawson Mardon Wheaton, Inc.*, 2000 WL 274013, at *3 (E.D. Pa. Mar. 13, 2000).

Here, this Court finds little local interest in litigating this matter in the Eastern District of Pennsylvania, relative to the Northern District of Texas. As Relator argues, this case has some connection to the Eastern District of Pennsylvania because he has brought a nationwide action involving a significant number of Pennsylvania healthcare providers who allegedly purchased Defendants' equipment and service contracts. (ECF 58, at 18). However, this is somewhat at odds with Relator's further argument that the case should not be transferred because this is a "national FCA action" in which "Texas possesses no uniquely local interest." (*Id.*). If, as Relator claims, this is a nationwide action of which the Pennsylvania-based healthcare practices are merely a part, then the Eastern District of Pennsylvania has no unique local interest in this action either.

More importantly, Defendants have demonstrated that the Northern District of Texas has a more significant local interest in this action. (*See* ECF 63, at 18–20). Relator has asserted claims against two Fort Worth-based Defendants (and a third not located in either forum, but that is related to the Texas-based Defendants). Most of the alleged conduct relevant to Defendants' alleged kickback and overcharging schemes was that of Texas-based employees of those Texas-based entities, and *all* of the alleged conduct underlying Relator's retaliation claim was performed by Texas-based Alcon employees against the then-Texas-based Relator. The Northern District of Texas has a local interest in allegations brought against corporations and workers based there. *See United States ex rel. Ferguson v. Lockheed Martin Corp.*, 2023 WL 8719443, at *7 (E.D. Tex. Dec. 18, 2023) (finding that the location of a corporation's headquarters — and several of its employees who were likely involved in the events giving rise to the case — in the Northern District of Texas favored transfer to that district). This Court finds that resolution of this action would be most meaningful in the Northern District of Texas, where most of the alleged misconduct took place. *See Lamusta*, 2000 WL 274013, at *3 (favoring transfer because "[r]esolution of the employment discrimination and sexual harassment claims [at issue] would be most meaningful and salutary in the community in which th[o]se unlawful acts were allegedly perpetrated, in which the alleged perpetrator maintains a workforce and in which the alleged victim was employed and resides"). While the alleged victims of the conduct here are dispersed, and not all located in the Northern District of Texas, the victims are also not concentrated in a particular forum such that another forum would have a greater interest than the Northern District of Texas has in this action.[14]

---

[14] The victim of the alleged retaliation is Relator, who is based in California, while the victim of the alleged kickback and overcharging scheme would be the United States Government, which is centralized in Washington, D.C., but represents the interests of citizens throughout the country, including in Texas.

Though this is not a purely Texas-centric action, the Northern District of Texas, nonetheless, has a sufficiently strong interest in this litigation for this factor to favor a transfer of venue.

*5. Public Policies of the Fora*

Relator argues, and Defendants do not dispute, that this factor is neutral because "both fora share the federal interest in enforcement of the False Claims Act and the federal laws underlying Relator's claims." (ECF 58, at 19). This Court agrees that the Eastern District of Pennsylvania and the Northern District of Texas share an interest in the fair and impartial enforcement of federal law. Accordingly, this factor is neutral.

*6. Familiarity of Trial Judge with Applicable State Law*

"[A] federal court generally has greater expertise in interpreting and applying the law of its home state than federal courts domiciled in foreign jurisdictions." *Optimal Interiors, LLC v. HON Co.*, 2009 WL 3837409, at *4 (E.D. Pa. Nov. 13, 2009). However, "this factor is of little weight." *Meisenhelder v. Sunbury Transp., Ltd.*, 2002 WL 32308675, at *4 (E.D. Pa. Jan. 22, 2002). "Federal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit." *Palagano*, 2015 WL 5025469, at *7 (quoting *E. Roofing Sys., Inc. v. Simon Prop. Grp., Inc.*, 2015 WL 679220, at *6 (M.D. Pa. Feb. 17, 2015)). They are more than capable of doing so, particularly where "the applicable state law claims . . . are not complex." *McKinney v. Pinter*, 2019 WL 952247, at *7 (E.D. Pa. Feb. 26, 2019) (citations omitted) (finding state law tort and contract claims were not complex); *see also Coppola*, 250 F.R.D. at 203 (noting that a federal judge's familiarity with state law is more important where state statutes and complex regulatory schemes are at issue than where less complex tort principles are).

Here, the Court does not find that there are sufficiently complex matters of state law at issue to favor a transfer to the Northern District of Texas. As noted, Relator's claims allege

violations of the FCA and the AKS, both of which are federal laws and "are applied uniformly throughout the federal district courts." *EVCO*, 379 F. Supp. 2d at 732. This Court and courts in the Northern District of Texas are, therefore, "equally familiar with the applicable law" governing those claims. *Nathan*, 2019 WL 3216613, at * 7.

Defendants' argument that issues of Texas contract law are intertwined with Relator's claims is unconvincing. That is, Defendants argue that assessing Relator's FCA claims will require interpreting the service contracts that Alcon allegedly used as unlawful remuneration. (ECF 63, at 18). However, Relator simply alleges that these service contracts constituted unlawful remuneration because Alcon provided customers with significant discounts on those contracts. (ECF 54, ¶ 100). Thus, the relevant contract provision is the price — hardly a complex issue requiring serious interpretive effort or unique state law expertise to analyze. Defendants also argue that Texas law will govern whether a release that Relator allegedly executed when settling previous litigation bars the retaliation claim that he now brings. (ECF 63, at 17). However, the enforceability of a release is a matter of contract law principles not likely to differ significantly between jurisdictions and, in any event, is not sufficiently complex to favor a transfer of venue. *See McKinney*, 2019 WL 952247, at *7 ("The Court affords little weight to this factor since the applicable state law claims, sounding in tort and contract, are not complex. . . . Therefore, whatever state law applies, the [out-of-state court] is more than capable of applying it.").

At the same time, there are no issues of Pennsylvania state law in this matter that would make this Court's relative expertise in Pennsylvania law, compared with the Northern District of Texas, weigh against a transfer of venue. Accordingly, this factor is neutral.

**CONCLUSION**

As discussed, the *Jumara* private and public interest factors weigh strongly in favor of a transfer of venue. Considering not only the number of factors that weigh in favor of and against transfer, but also their substance, this Court concludes that a transfer of venue is warranted. The factors favoring transfer share a theme: this matter primarily involves underlying conduct, parties, and entities located in Texas. The Eastern District of Pennsylvania is, at best, ancillary to this case. The lone factor weighing against transfer — the convenience of the parties — illuminates why Relator resists transfer: it may impose a financial burden on him. However, considering the other factors, those factors outweigh Plaintiff's convenience or lack thereof. Transferring this matter to the Northern District of Texas will not "merely [] shift the inconvenience from one party to the other." *DermaMed,* 152 F. Supp. 2d at 783. Rather, it will shift the adjudication of this matter to the most appropriate venue, the venue with the greatest interest in this case. Accordingly, this Court concludes that Defendants have sufficiently demonstrated that "all relevant things considered, the case would be better off transferred to another district." *In re United States*, 273 F.3d 380 at 388.

For the reasons set forth, Defendants' motion to transfer venue is granted. Accordingly, this matter is transferred to the Fort Worth division of the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.